FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

**Slep-Tone Entertainment Corporation** and **Sound Choice Studios, Inc.**,

      Plaintiffs,

      v.

**Associated Consultants,** a Virginia general partnership composed of **Glenn Lorenz, James Brandon**, and **John Doe No. 1** (identity unknown); **Horizon MusicFest LLC; Kirk Rubley** d/b/a Kirkabee Deejays; **David Sneddon** d/b/a Super Dave's Karaoke; **Elwood Junkins** d/b/a Starlight Entertainment; **Nelson Coffman** d/b/a Nelson's Karaoke; **Metro Entertainment, LLC; Terry Lee Ryan; Ron Watkin** d/b/a Karaoke Express; **Jason B. Ingram** d/b/a Mobile Disc Jockeys; **Nick Paravati** d/b/a Nick's Karaoke; **SJ's Lakeside Tavern; Nicholas Fisher** d/b/a Karaoke One; **L&W Entertainment,** a Virginia general partnership composed of **Linda Lackey** and **Walter Lackey; Blue Note Entertainment & Productions, LLC; Epiphany Entertainment,** a Virginia general partnership composed of **Thomas J. Grosvenor** and **Sarah B. Grosvenor; Shaner Sound Services,** a Virginia general partnership composed of **Ken Shaner, Drew Shaner,** and **Neal Shaner; Jason E. Call** d/b/a KJ

Civil Action No. 1:09cv 1390
CMH/JFA

Productions; **Two Guys Productions**, a Virginia general partnership composed of **Clint Novak** and **Bob Kidd**; **Nigel Banderas** d/b/a Virginia Idol Entertainment; **Nard's Professional DJ Service**; **Hot Shot Enterprises, LLC** d/b/a Hot Shot Mobile DJ; **Jimmy O'Neal** d/b/a Good Tymes Karaoke & DJ Services; **Richard Nunnally** d/b/a King Richard Karaoke; **Gary Briggs, Sr.** d/b/a Gary's Karaoke & DJ Service; **Gary Briggs, Jr.** d/b/a Gary's Karaoke & DJ Service; **Janet Leimberger** d/b/a Gowitit Karaoke/DJ; **Parker Meadows** d/b/a Camelot Entertainment; **Jeffrey Smith** d/b/a Smitty's Karaoke; **Tony Kohlhepp** d/b/a Symphonic Karaoke & DJ Service; **Fagan's Restorations, Inc.** d/b/a Irelands Four Courts; **RB Pub, Inc.** d/b/a Finnegan's Bar and Grill; **Moe's Peyton Place**; **Teixeira, Inc.** d/b/a The Clubhouse Restaurant and Sports Bar; **The Ashburn Pub**; **K2 Restaurant and Lounge** a/k/a Kilroys II; **1319 King Street, Inc.** d/b/a Rock It Grill; **SNSA, INC.** d/b/a Fast Eddie's Sports and Billiards; **Paradiso, Inc.** d/b/a Paradiso Ristorante Italiano; **Chad Painter** d/b/a Wonderland; **REJ Enterprises, Inc.** d/b/a Murphy's Law Billiards & Sports Pub; **Bubba's Restaurant, Inc.**; **The Wrangler Sports Bar & Grill, LLC**; **Andrade's International Restaurant, LLC**; **OSB&G, LLC** d/b/a Overtime Sports Bar & Grill; **Nanking Chinese Restaurant**; **Nacho Mama's, Inc.**; **French Bistro 104, LLC** d/b/a Bistro 104; **CFC of Charleston, Inc.** d/b/a

Siné Irish Pub & Restaurant; **King Pin Lanes, Inc.**; **Hooah's Sports Grill**; **Patrick's Restaurant**; **Betlin Restaurants, LLC** d/b/a The Stratford Grill; **Mars Bar**; **Steel Horse Bar & Grille**; **J & D's Café**; **Hospitality of Richmond, LLC** d/b/a Cha Cha's Cantina; **Andrew Blanton** d/b/a Bethany Entertainment; **Michael Cowles** d/b/a Capitol Party Authority; and **David Taylor**,

       Defendants.

## COMPLAINT

COME NOW the Plaintiffs, **Slep-Tone Entertainment Corporation** ("Slep-Tone"), a North Carolina corporation, and **Sound Choice Studios, Inc.** ("SCS"), a Delaware corporation (SCS and Slep-Tone being collectively referred to as "Sound Choice"), by and through their counsel, complaining of the Defendants and for their Complaint stating as follows:

## INTRODUCTION

Sound Choice was founded almost 25 years ago by Kurt and Derek Slep, two brothers with a vision to nurture the development in America of a participatory entertainment phenomenon now known as "karaoke." During that time, Sound Choice came to be recognized as the leading producer of high-quality karaoke

3

backing music. The company invested over $18 million to re-record and replicate the authentic sound of popular music across different eras and genres of music.

Sound Choice's dedication to producing music of the highest quality and most authentic character led its music to become the staple of most every karaoke show in the country. As karaoke grew in popularity, Sound Choice became the brand that most every karaoke fan wanted to sing and that most every karaoke jockey ("KJ") wanted in his or her library.

KJs play karaoke songs using compact discs written in a special encoded format known as "CD+G" ("compact disc plus graphics"), in which the CD contains the music and the lyrics, which will display on a screen. In recent years, computer technology, cheap file memory devices, and the internet have made it possible for CD+G discs to be decoded and "ripped" (copied) to a user's hard drive and easily copied and distributed between KJs. This technology has proven irresistible to KJs, many of whom have used this opportunity to copy one purchased disc to several different computer based systems, copy a singer's personal discs if they use them during a show, "swap" song files among each other, download them from illegal file-sharing sites and build libraries of tens of thousands of karaoke songs without paying for them. Whereas in the past a KJ would buy multiple copies of an original CD+G, now they simply "clone" their songs for multiple commercial systems or even their entire karaoke song libraries

to start a new operation.  Additionally, many KJs or operators starting in the business simply buy computer drives pre-loaded with thousands of illegally copied songs.

These practices have become so widespread that Sound Choice has been nearly driven out of business.  At its peak, Sound Choice employed 75 individuals and produced as many as 5 new karaoke discs per month.  Today, Sound Choice employs fewer than 10 individuals and loses money on every new karaoke disc it produces, since sales are not high enough to cover recording and licensing costs.  For example, the latest karaoke disc Sound Choice produced has sold fewer than 750 copies—yet the songs from that disc can be found on as many as 30,000 karaoke systems around the United States.

For KJs, karaoke is a commercial enterprise.  KJs who legitimately acquired all of their music at great cost are being forced by illicit competition to produce shows for lower and lower fees.  Illegitimate competitors offer libraries of tens of thousands of songs, which would have cost $50,000 to $100,000 or more to acquire legitimately, but produce shows for one-third the rates a legitimate KJ can offer.  The result is significant financial pressure on once-legitimate KJs to skirt or ignore the law and become pirates, simply to stay in business.

Sound Choice has been forced to undertake this litigation in order to ensure that it survives and continues to produce the high-quality karaoke music its fans demand and to level the playing field for the legitimate KJs.

## JURISDICTION AND VENUE

1.  This is an action for trademark infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

2.  This Court further has exclusive jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to the Plaintiffs' unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because all of the defendants reside in this State, and at least one of the defendants resides in this judicial district.

## THE PLAINTIFFS

4.    Plaintiff Slep-Tone is a North Carolina corporation having its principal place

of business at 14100 South Lakes Drive, Charlotte, North Carolina.

5.    Plaintiff SCS is a Delaware corporation having its principal place of

business at 14100 South Lakes Drive, Charlotte, North Carolina.

6.    Plaintiffs Slep-Tone and SCS are related companies by virtue of their

common ownership and control, with each company holding rights and

interests sought to be vindicated through this action.

## THE DEFENDANTS

7.    Defendant Horizon MusicFest LLC ("HORIZON") is a Virginia limited

liability company that is engaged in the business of providing karaoke

entertainment in at least the Ashburn, Virginia, area.

8.    Defendant Associated Consultants ("ASSOCIATED") is a Virginia general

partnership composed of three individuals who reside in the Commonwealth

of Virginia, Defendant Glenn Lorenz ("LORENZ"), Defendant James

Brandon ("BRANDON") and Defendant John Doe No. 1, whose identity is

presently unknown.  ASSOCIATED is engaged in the business of providing

karaoke entertainment in at least the Arlington, Virginia, area.

9.    Defendant Kirk Rubley ("RUBLEY") is an individual who resides in the Commonwealth of Virginia, who does business as "Kirkabee Deejays," and who is engaged in the business of providing karaoke entertainment in at least the Springfield, Virginia, area.

10.   Defendant David Sneddon ("SNEDDON") is an individual who resides in the Commonwealth of Virginia, who does business as "Super Dave's Karaoke," and who is engaged in the business of providing karaoke entertainment in at least the Manassas, Virginia, area.

11.   Defendant Elwood Junkins ("JUNKINS") is an individual who resides in the Commonwealth of Virginia, who does business as "Starlight Entertainment," and who is engaged in the business of providing karaoke entertainment in at least the Woodbridge, Virginia, area.

12.   Defendant Nelson Coffman ("COFFMAN") is an individual who resides in the Commonwealth of Virginia, who does business as "Nelson's Karaoke," and who is engaged in the business of providing karaoke entertainment in at least the Alexandria, Virginia, area.

13.   Defendant Metro Entertainment, LLC ("METRO") is a Virginia limited liability company that is engaged in the business of providing karaoke entertainment in at least the Fairfax, Virginia, area.

14.    Defendant Terry Lee Ryan ("RYAN") is an individual who resides in the Commonwealth of Virginia and who is engaged in the business of providing karaoke entertainment in at least the Alexandria, Virginia, area.

15.    Defendant Ron Watkin ("WATKIN") is an individual who resides in the Commonwealth of Virginia, who does business as "Karaoke Express," and who is engaged in the business of providing karaoke entertainment in at least the Arlington, Virginia, area.

16.    Defendant Jason B. Ingram ("INGRAM") is an individual who resides in the Commonwealth of Virginia, who does business as "Mobile Disc Jockeys," and who is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

17.    Defendant Nick Paravati ("PARAVATI") is an individual who resides in the Commonwealth of Virginia, who does business as "Nick's Karaoke," and who is engaged in the business of providing karaoke entertainment in at least the Midlothian, Virginia, area.

18.    Defendant SJ's Lakeside Tavern ("SJ'S") is a business organization of unknown type that is engaged in the business of operating an eating and drinking establishment in the Richmond, Virginia, area.

19.    Defendant Nicholas Fisher ("FISHER") is an individual who resides in the Commonwealth of Virginia, who does business as "Karaoke One," and who

is engaged in the business of providing karaoke entertainment in at least the Mechanicsville, Virginia, area.

20.    Defendant L&W Entertainment ("L&W") is a Virginia general partnership composed of two individuals who reside in the Commonwealth of Virginia, Defendant Linda Lackey ("L. LACKEY") and Defendant Walt Lackey ("W. LACKEY").  L&W is engaged in the business of providing karaoke entertainment in at least the Petersburg, Virginia, area.

21.    Defendant Blue Note Entertainment & Productions, LLC ("BLUE NOTE") is a Virginia limited liability company, now administratively dissolved, that is engaged in the business of providing karaoke entertainment in at least the Manquin, Virginia, area.

22.    Defendant Epiphany Entertainment ("EPIPHANY") is a Virginia general partnership that is composed of two individuals who reside in the Commonwealth of Virginia, Defendant Thomas J. Grosvenor ("T. GROSVENOR") and Defendant Sarah B. Grosvenor ("S. GROSVENOR"), and that is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

23.    Defendant Shaner Sound Services ("SHANER") is a Virginia general partnership that is composed of three individuals who reside in the Commonwealth of Virginia, Defendant Ken Shaner ("K. SHANER"),

Defendant Drew Shaner ("D. SHANER"), and Defendant Neal Shaner ("N. SHANER"), and that is engaged in the business of providing karaoke entertainment in at least the Mechanicsville, Virginia, area.

24.    Defendant Jason E. Call ("CALL") is an individual who resides in the Commonwealth of Virginia, who does business as "KJ Productions," and who is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

25.    Defendant Two Guys Productions ("TWO GUYS") is a Virginia general partnership that is composed of two individuals who reside in the Commonwealth of Virginia, Defendant Clint Novak ("NOVAK") and Defendant Bob Kidd ("KIDD"), and that is engaged in the business of providing karaoke entertainment in at least the Stafford, Virginia, area.

26.    Defendant Nigel Banderas ("BANDERAS") is an individual who resides in the Commonwealth of Virginia, who does business as "Virginia Idol Entertainment," and who is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

27.    Defendant Nard's Professional DJ Service ("NARD'S") is a business entity of unknown type that is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

28.   Defendant Hot Shot Enterprises, LLC ("HOT SHOT") is a Virginia limited liability company that does business as "Hot Shot Mobile DJ" and that is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

29.   Defendant Jimmy O'Neal ("O'NEAL") is an individual who resides in the Commonwealth of Virginia, who does business as "Good Tymes Karaoke & DJ Services," and who is engaged in the business of providing karaoke entertainment in at least the Midlothian, Virginia, area.

30.   Defendant Richard Nunnally ("NUNNALLY") is an individual who resides in the Commonwealth of Virginia, who does business as "King Richard Karaoke," and who is engaged in the business of providing karaoke entertainment in at least the Prince George, Virginia, area.

31.   Defendant Gary Briggs, Sr. ("BRIGGS SR.") is an individual who resides in the Commonwealth of Virginia, who does business as "Gary's Karaoke & DJ Service," and who is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

32.   Defendant Gary Briggs, Jr. ("BRIGGS JR.") is an individual who resides in the Commonwealth of Virginia, who separately does business as "Gary's Karaoke & DJ Service," and who is engaged in the business of providing karaoke entertainment in at least the Richmond, Virginia, area.

33.   Defendant Janet Leimberger ("LEIMBERGER") is an individual who
      resides in the Commonwealth of Virginia, who does business as "Gowitit
      Karaoke/DJ," and who is engaged in the business of providing karaoke
      entertainment in at least the Chester, Virginia, area.

34.   Defendant Parker Meadows ("MEADOWS") is an individual who resides in
      the Commonwealth of Virginia, who does business as "Camelot
      Entertainment," and who is engaged in the business of providing karaoke
      entertainment in at least the Richmond, Virginia, area.

35.   Defendant Jeffrey Smith ("SMITH") is an individual who resides in the
      Commonwealth of Virginia, who does business as "Camelot Entertainment,"
      and who is engaged in the business of providing karaoke entertainment in at
      least the Richmond, Virginia, area.

36.   Defendant Tony Kohlhepp ("KOHLHEPP") is an individual who resides in
      the Commonwealth of Virginia, who does business as "Symphonic Karaoke
      & DJ Service," and who is engaged in the business of providing karaoke
      entertainment in at least the Richmond, Virginia, area.

37.   Defendant Fagan's Restorations, Inc. ("FAGAN'S") is a Virginia
      corporation that does business as and operates Irelands Four Courts, an
      eating and drinking establishment located in the Arlington, Virginia, area.

38.   Defendant RB Pub, Inc. ("RB") is a Virginia corporation that does business as and operates Finnegan's Bar and Grill, an eating and drinking establishment located in the Ashburn, Virginia, area.

39.   Defendant Moe's Peyton Place ("MOE'S") is a business entity of unknown type that is or operates an eating and drinking establishment of that name located in the Springfield, Virginia, area.

40.   Defendant Teixeira, Inc. ("TEIXEIRA") is a Virginia corporation that does business as and operates The Clubhouse Restaurant and Sports Bar, an eating and drinking establishment located in the Manassas, Virginia, area.

41.   Defendant The Ashburn Pub ("ASHBURN") is a business entity of unknown type that is or operates an eating and drinking establishment located in the Ashburn, Virginia, area.

42.   Defendant K2 Restaurant and Lounge ("K2") is a business entity of unknown type that is or operates an eating and drinking establishment of that name, also known as "Kilroy's II," that is located in the Woodbridge, Virginia, area.

43.   Defendant 1319 King Street, Inc. ("1319") is a Virginia corporation that does business as and operates Rock It Grill, an eating and drinking establishment located in the Alexandria, Virginia, area.

44.    Defendant SNSA INC. ("SNSA") is a Virginia corporation that does
       business as and operates Fast Eddie's Sports and Billiards, an eating and
       drinking establishment located in the Fairfax, Virginia, area.

45.    Defendant Paradiso, Inc. ("PARADISO") is a Virginia corporation that does
       business as and operates Paradiso Ristorante Italiano, an eating and drinking
       establishment located in the Alexandria, Virginia, area.

46.    Defendant Chad Painter ("PAINTER") is a resident of the Commonwealth
       of Virginia who does business as and operates Wonderland, an eating and
       drinking establishment located in the Richmond, Virginia, area.

47.    Defendant REJ Enterprises, Inc. ("REJ") is a Virginia corporation that does
       business as and operates Murphy's Law Billiards & Sports Pub, an eating
       and drinking establishment located in the Midlothian, Virginia, area.

48.    Defendant Bubba's Restaurant, Inc. ("BUBBA'S") is a Virginia corporation
       that operates an eating and drinking establishment of that name located in
       the Richmond, Virginia, area.

49.    Defendant The Wrangler Sports Bar & Grill, LLC ("WRANGLER") is a
       Virginia limited liability company that operates an eating and drinking
       establishment of that name located in the Mechanicsville, Virginia, area.

50.    Defendant Andrade's International Restaurant, LLC ("ANDRADE'S") is a
Virginia limited liability company that operates an eating and drinking
establishment of that name located in the Petersburg, Virginia, area.

51.    Defendant OSB&G, LLC ("OVERTIME") is a Virginia limited liability
company that does business as and operates Overtime Sports Bar & Grill, an
eating and drinking establishment located in the Manquin, Virginia, area.

52.    Defendant Nanking Chinese Restaurant ("NANKING") is a business entity
of unknown type that is or operates an eating and drinking establishment of
that name located in the Richmond, Virginia, area.

53.    Defendant Nacho Mama's, Inc. ("NACHO MAMA'S") is a Virginia
corporation that operates an eating and drinking establishment of that name
located in the Mechanicsville, Virginia, area.

54.    Defendant French Bistro 104, LLC ("BISTRO") is a Virginia limited
liability company that does business as and operates Bistro 104, an eating
and drinking establishment located in the Richmond, Virginia, area.

55.    Defendant CFC of Charleston, Inc. ("CFC") is a South Carolina corporation
that does business as and operates Siné Irish Pub & Restaurant, an eating
and drinking establishment located in the Richmond, Virginia, area.

56.     Defendant King Pin Lanes, Inc. ("KING PIN") is a Virginia corporation that operates a bowling alley, restaurant, and lounge of that name located in the Midlothian, Virginia, area.

57.     Defendant Hooah's Sports Grill ("HOOAH'S") is a business entity of unknown type that does business as or operates an eating and drinking establishment of that name located in the Prince George, Virginia, area.

58.     Defendant Patrick's Restaurant ("PATRICK'S") is a business entity of unknown type that does business as or operates an eating and drinking establishment located in the Richmond, Virginia, area.

59.     Defendant Betlin Restaurants, LLC ("BETLIN") is a Virginia limited liability company that does business as and operates The Stratford Grill, an eating and drinking establishment located in the Richmond, Virginia, area.

60.     Defendant Mars Bar ("MARS") is a business entity of unknown type that does business as or operates a drinking establishment of that name located in the Richmond, Virginia, area.

61.     Defendant Steel Horse Bar & Grille ("STEEL") is a business entity of unknown type that does business as or operates a drinking establishment of that name located in the Chester, Virginia, area.

62.   Defendant J & D's Café ("J & D'S") is a business entity of unknown type that does business as or operates an eating establishment of that name located in the Richmond, Virginia, area.

63.   Defendant Hospitality of Richmond, LLC ("HOSPITALITY") is a Virginia limited liability company that does business as and operates Cha Cha's Cantina, an eating and drinking establishment located in the Richmond, Virginia, area.

64.   Defendant Andrew Blanton ("BLANTON") is an individual who resides in the Commonwealth of Virginia, who does business as "Bethany Entertainment," and who is in the business of providing karaoke entertainment at least in the Ashburn, Virginia, area.

65.   Defendant Michael Cowles ("COWLES") is an individual who resides in the Commonwealth of Virginia, who does business as "Capitol Party Authority," and who is in the business of providing karaoke entertainment at least in the Ashburn, Virginia, area.

66.   Defendant David Taylor ("TAYLOR") is an individual who resides in the Commonwealth of Virginia and who is in the business of providing karaoke entertainment at least in the Ashburn, Virginia, area.

## BACKGROUND FACTS

67. The term "karaoke" means "empty orchestra" in Japanese. Karaoke entertainment has grown into a multi-million dollar business in the United States.

68. Karaoke compact disc plus graphics ("CD+G") recordings contain re-created arrangements of popular songs.

69. Typically, the lead vocal tracks in a recording used for a karaoke show are omitted so that a karaoke participant can sing along, as though he or she were the lead singer. In other situations, the lead vocal track by a sound-alike artist might be included, and some formats allow the lead vocal to be selectively muted upon playback so that the karaoke recording may be listened to either with or without the lead vocals.

70. The "graphics" portion of a karaoke recording refers to the encoding of the recording with data to provide a contemporaneous video display of the lyrics to the song, in order to aid the performer.

71. This graphics data is also utilized to display the Sound Choice trademarks.

72. Entertainers who provide karaoke services in bars and other venues are known as karaoke jockeys ("KJs"). The services provided by KJs typically include providing the karaoke music and equipment for playback, entertaining the assembled crowd for warm-up purposes, and organizing the

karaoke show by controlling access to the stage, setting the order of
performance, and operating the karaoke equipment.

73.  Typically, a KJ will maintain a catalog of songs available for performance in
order to aid participants in selecting a song to sing.

74.  Legitimate KJs purchase equipment and songs recorded in CD+G format
and charge for the above-mentioned karaoke services.

75.  Many KJs, such as some of the present Defendants, obtain, copy, share,
distribute and/or sell digitized copies of the songs via pre-loaded hard drives,
USB drives, CD-R's, or the Internet.

76.  Sound Choice has never authorized the digitization of its songs by KJs for
use in producing karaoke shows.

77.  The copying, sharing, distribution, and selling of these digitized copies is not
accompanied by the payment of any royalty to the Plaintiffs, nor authorized
by any license agreement.

78.  The Plaintiffs pay statutory and negotiated royalties to the owners of
copyright in the underlying musical works for their activities in legitimately
copying, distributing, and selling CD+Gs and/or recordings in other formats.

79.  Those persons, including the Defendants, who illegitimately obtain, copy,
share, distribute, and/or sell digitized copies of the Plaintiffs' karaoke discs

do not pay royalties to the owners of copyright in the underlying musical works.

80.   Plaintiff Sound Choice has spent millions of dollars building and maintaining studios, hiring artists, building a distribution facility, paying royalties to copyright owners, building a company that is capable of reliably producing high-quality karaoke versions of current and historical musical hits, and building a brand that is one of the pre-eminent brands in the industry.

81.   The widespread creation of counterfeit copies of the Plaintiffs' karaoke discs in CD+G and other formats has denied the Plaintiffs the benefit of their investments.

82.   These counterfeits include Sound Choice's registered trademarks, such that to the consumers of the illegitimate KJs' services, the counterfeits are virtually indistinguishable from genuine Sound Choice materials.

83.   For each of the several recent releases of new karaoke music by Sound Choice, as many as thirty illegitimate copies of the contents of CD+G have been created, on average, for each legitimate copy sold. Sound Choice has lost a considerable amount of money due to this widespread piracy.

84.   Such widespread illegal copying of music has been made possible by improving and ever cheaper computer technology and memory devices and the easy distribution of digital content over the internet.

85.   Widespread pirating of songs has contributed to the loss of more than sixty jobs at Sound Choice headquarters in Charlotte, NC and several consecutive years of operating losses as revenues do not cover fixed costs.

86.   Legitimate KJs spend thousands of dollars acquiring the Plaintiffs' karaoke music, an irreducible overhead cost that must be recovered over a significant number of engagements.

87.   Illegitimate KJs, who acquire the songs in their libraries illegally, have an unfair advantage over legitimate KJs, because the illegitimate KJs are able to provide karaoke services with a considerably lower overhead cost and significantly more song through the pirating of the Plaintiffs' music.

88.   Piracy therefore unfairly increases the profits of illegitimate KJs and unfairly decreases the profits of legitimate KJs, a condition that pressures legitimate KJs to either commit piracy instead of doing business with the Plaintiffs and other karaoke music producers or lose their shows to KJs offering more songs at cheaper prices to the same venues.

89. Because of piracy, it is nearly impossible for legitimate KJs to compete against illegal KJs, who are able to provide less expensive karaoke services and a greater number of songs due to their lower overhead costs.

## THE RIGHTS OF THE PLAINTIFFS

90. Plaintiff Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448 for the trademark SOUND CHOICE.

91. Plaintiff Slep-Tone is also the owner of U.S. Trademark Registration No. 2,000,725, for a display trademark as follows:



92. Plaintiff Slep-Tone has, for the entire time its marks ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendants, with notice of its federal registrations through the consistent display of the symbol ® with its marks as used.

93. Plaintiff SCS is a beneficiary of the business goodwill associated with the Sound Choice Marks, in that sales of karaoke discs by SCS under the Sound Choice Marks inures to the benefit of both SCS and Slep-Tone.

## INVESTIGATION OF THE DEFENDANTS' ACTIVITIES

94.    The Plaintiffs' investigators observed each of the Defendants possessing, using, or authorizing or benefiting from unauthorized counterfeit copies of at least one work bearing the Sound Choice Marks.

95.    Defendants HORIZON, BLANTON, and TAYLOR were observed during the month of August 2009 operating a karaoke system at Finnegan's Bar & Grill in Ashburn, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

96.    Defendants LORENZ, BRANDON, and John Doe No. 1, operating through their partnership Defendant ASSOCIATED, were observed operating a karaoke system at Irelands 4 Courts in Arlington, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

97.    Defendant RUBLEY was observed during the month of August 2009 operating a karaoke system at Peyton Place in Springfield, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

98.    Defendant SNEDDON was observed during the month of August 2009 operating a karaoke system at The Clubhouse in Manassas, Virginia, and

displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

99.   Defendant JUNKINS was observed during the month of August 2009 operating a karaoke system at Kilroy's II Restaurant & Lounge in Woodbridge, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

100.   Defendant COFFMAN was observed during the month of August 2009 operating a karaoke system at Rock-It Grill in Alexandria, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

101.   Defendant METRO was observed during the month of August 2009 operating a karaoke system at Fast Eddies in Fairfax, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

102.   Defendant RYAN was observed during the month of August 2009 operating a karaoke system at Paradiso Ristorante Italiano in Alexandria, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

103.   Defendant WATKIN was observed during the month of September 2009 operating a karaoke system at the Rock Bottom Brewery in Arlington,

Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

104. Defendant INGRAM was observed during the month of September 2009 operating a karaoke system at Wonderland in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

105. Defendant PARAVATI was observed during the month of September 2009 operating a karaoke system at Murphy's Law 2 in Midlothian, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

106. Defendant SJ'S was observed during the month of September 2009 operating a karaoke system for its own account in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

107. Defendant FISHER was observed during the month of September 2009 operating a karaoke system at Wrangler Sports Bar in Mechanicsville, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

108. Defendants L. LACKEY and W. LACKEY, through their partnership Defendant L&W, were observed during the month of September 2009

operating a karaoke system at Andrade's International Restaurant in Petersburg, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

109.  Defendant BLUE NOTE was observed during the month of September 2009 operating a karaoke system at Overtime Bar in Manquin, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

110.  Defendants T. GROSVENOR and S. GROSVENOR, through their partnership Defendant EPIPHANY, were observed during the month of September 2009 operating a karaoke system at Nanking Restaurant in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

111.  Defendants K. SHANER, D. SHANER, and N. SHANER, through their partnership SHANER, were observed during the month of September 2009 operating a karaoke system at Nacho Mama's in Mechanicsville, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

112.  Defendant CALL was observed during the month of September 2009 operating a karaoke system at Bistro 104 in Richmond, Virginia, and

displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

113. Defendants NOVAK and KIDD, through their partnership TWO GUYS, were observed during the month of August 2009 operating a karaoke system at Applebee's Restaurant in Stafford, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

114. Defendant BANDERAS was observed during the month of September 2009 operating a karaoke system at Siné Irish Pub in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

115. Defendant NARD'S was observed during the month of September 2009 operating a karaoke system at T.G.I. Friday's in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

116. Defendant HOT SHOT was observed during the month of September 2009 operating a karaoke system at Applebee's Restaurant in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

117. Defendant O'NEAL was observed during the month of September 2009 operating a karaoke system at King Pin Lanes in Midlothian, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

118. Defendant NUNNALLY was observed during the month of 2009 operating a karaoke system at Hooah's in Prince George, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

119. Defendant BRIGGS SR. was observed during the month of September 2009 operating a karaoke system at the Stratford Inn in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

120. Defendant BRIGGS JR. was observed during the month of September 2009 operating a karaoke system at Mars Bar in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

121. Defendant LEIMBERGER was observed during the month of October 2009 operating a karaoke system at Steel Horse Bar & Grill in Chester, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

122. Defendant MEADOWS was observed during the month of September 2009 operating a karaoke system at J & D's Café in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

123. Defendant SMITH was observed during the month of September 2009 operating a karaoke system at Cha Cha's Cantina in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

124. Defendant KOHLHEPP was observed during the month of September 2009 operating a karaoke system at Bubba's Restaurant in Richmond, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

125. Defendant FAGAN'S was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Arlington, Virginia.

126. Defendant RB was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Ashburn, Virginia.

127. Defendant MOE'S was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Springfield, Virginia.

128. Defendant TEIXEIRA was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Manassas, Virginia.

129. Defendant ASHBURN was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Ashburn, Virginia.

130. Defendant K2 was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Woodbridge, Virginia.

131. Defendant 1319 was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Alexandria, Virginia.

132. Defendant SNSA was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Fairfax, Virginia.

133. Defendant PARADISO was observed during the month of August 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Alexandria, Virginia.

134. Defendant PAINTER was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at his facility in Richmond, Virginia.

135. Defendant REJ was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Midlothian, Virginia.

136. Defendant BUBBA'S was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

137.  Defendant WRANGLER was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Mechanicsville, Virginia.

138.  Defendant ANDRADE'S was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Petersburg, Virginia.

139.  Defendant OVERTIME was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Manquin, Virginia.

140.  Defendant NANKING was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

141.  Defendant NACHO MAMA'S was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Mechanicsville, Virginia.

142.  Defendant BISTRO was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

143.  Defendant CFC was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

144.  Defendant KING PIN was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Midlothian, Virginia.

145.  Defendant HOOAH'S was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Prince George, Virginia.

146.  Defendant PATRICK'S was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

147.  Defendant BETLIN was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

148.  Defendant MARS was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

149.  Defendant STEEL was observed during the month of October 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Chester, Virginia.

150.  Defendant J & D'S was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

151.  Defendant HOSPITALITY was observed during the month of September 2009 to authorize, permit, and benefit from the operation of a karaoke system containing at least one counterfeit copy of a work bearing the Sound Choice Marks at its facility in Richmond, Virginia.

152. Defendant COWLES was observed during the month of August 2009 operating a karaoke system at the Ashburn Pub in Ashburn, Virginia, and displaying the Sound Choice Marks without right or license in connection with one or more karaoke shows.

153. The infringement by each of the Defendants of the Sound Choice Marks is a regular act that has been repeated numerous times over a period of months or years and is not an isolated or transient occurrence.

154. Based upon the popularity of Sound Choice's music and the size of the Defendants' libraries, the Plaintiffs have a good-faith belief that discovery will show that each of the Defendants who operates a karaoke system for his, her, or its own account is in possession of unauthorized counterfeit copies of the Plaintiffs' karaoke discs, primarily in digitized format, which are marked with the Sound Choice Marks.

## FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

155. Sound Choice realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein, and incorporates them herein by reference.

156. Each of the Defendants used, or authorized or directly benefited from the use of, a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by

displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

157. The Defendants' use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

158. Plaintiff Slep-Tone did not license any of the Defendants to use the Sound Choice Marks in connection with the provision of those services.

159. The Defendants' use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive the Defendants' customers and patrons into believing that the Defendants' services are being provided with the authorization of the Plaintiffs.

160. Unless enjoined by the Court, the Defendants' infringing activities as described above will continue unabated and will continue to cause harm to the Plaintiffs.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

161. Sound Choice realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein, and incorporates them herein by reference.

162. On each occasion when they caused a Sound Choice song to be played during a karaoke show, the Defendants displayed the Sound Choice Marks in connection with the Defendants' karaoke services.

163. The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the Plaintiffs sponsored or approved the Defendants' services and commercial activities.

164. The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by Plaintiff and purchased by the Defendants.

165. The Defendants' use of the Sound Choice Marks in this fashion would have inured to the benefit of the Plaintiffs if the Defendants had legitimately acquired genuine Sound Choice discs instead of counterfeiting them or acquiring counterfeit copies, in that each of the Plaintiffs would have received revenue from such sales.

166. Because the Plaintiffs have been denied this revenue, they have each been damaged by the Defendants' uses.

167.  Unless enjoined by the Court, the Defendants' unfair competition activities

as described above will continue unabated and will continue to cause harm

to the Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for judgment against the Defendants and that

the Court:

A.     Find that each of the Defendants has committed acts of infringement,

including but not limited to counterfeiting, of the federally registered Sound

Choice Marks;

B.     Find that each of the Defendants has engaged in unfair competition against

each of the Plaintiffs in violation of 15 U.S.C. § 1125(a);

C.     Enter judgment against each of the Defendants and in favor of the Plaintiffs;

D.     Find the that Defendants' activities were in all respects conducted willfully

and for profit;

E.     Award to the Plaintiffs the Defendants' profits and the damages sustained by

the Plaintiffs because of the Defendants' conduct in infringing the Sound

Choice Marks, or, in the alternative, statutory damages per trademark

infringed by counterfeiting;

F.  Award to the Plaintiffs the Defendants' profits and the damages sustained by the Plaintiffs because of the Defendants' acts of unfair competition under 15 U.S.C. § 1125(a);

G.  Award to the Plaintiffs treble and/or punitive damages, as available, for the Defendants' acts of willful infringement;

H.  Order the seizure of all computer disks, drives, or other media belonging to any of the Defendants, which media contain illegal counterfeits of registered trademarks;

I.  Grant the Plaintiffs injunctive relief against further infringement of the Sound Choice Marks by the Defendants;

J.  Award the Plaintiffs their costs of suit and attorney's fees; and

K.  Grant the Plaintiffs such other and further relief as justice may require.

**A JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this the 18th day of December, 2009.

_____
Thomas P. Pavelko
VA Bar # 019901
thomas.pavelko@novakdruce.com
Peter N. Lalos
VA Bar #06728
peter.lalos@novakdruce.com
NOVAK DRUCE & QUIGG LLP
1300 Eye Street, NW
1000 West Tower
Washington, D.C. 20005
Tel: (202) 659.0100;
Fax: (202) 659.0105


Of Counsel:
The Harrington Practice PLLC
10130 Mallard Creek Road, Suite 110
Charlotte, North Carolina 28262-6001
Telephone:  704-315-5800